349 So.2d 382 (1977)
FO-COIN COMPANY
v.
Edward R. DRURY.
No. 8291.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1977.
Rehearing Denied September 9, 1977.
*383 Cameron C. Gamble, New Orleans, for plaintiff-appellant.
Edward R. Drury, New Orleans, in pro. per.
Clark A. Richard, Metairie, for defendant-appellee.
Glenn L. Morgan, New Orleans, for Dr. Norman S. Hunt, third party defendant-appellant.
A. W. Wambsgans, Metairie, for William M. Justice, Jr., third party defendant-appellee.
Before REDMANN, STOULIG and MORIAL, JJ.
STOULIG, Judge.
Plaintiff, Fo-Coin Company, filed a damage suit alleging that on March 29, 1974, approximately 14 months before the expiration of his written lease, the defendant, Edward R. Drury, wrongfully removed plaintiff's installed laundry equipment from Drury's apartment complex. Defendant, who acquired the property on July 20, 1973, asserted he was not bound by the lease because a conveyance certificate obtained by the notary public who passed the act of sale did not reflect there was an outstanding recorded lease obligation on the property. Assuming the position of third party plaintiff, Drury impleaded William Justice, Clerk of the 24th Judicial District Court, and Dr. Norman Hunt, his vendor, as third party defendants, seeking indemnification, in the event he is cast in judgment, from either or both for negligently failing to include the lease on the conveyance certificate and/or for failing to inform him that a lease existed. Third party defendant Dr. Norman Hunt filed a reconventional demand against both the plaintiff and the defendant. Third party defendant William Justice also filed a third party demand against Dr. Hunt seeking indemnification should the clerk of court be cast in judgment. From a judgment dismissing plaintiff's suit and all other demands, all the litigants have appealed.
The agreement between Dr. Hunt and Fo-Coin, dated May 29, 1970, which was registered in January 1971 in C.O.B. 727, folio 222, Parish of Jefferson, provides in part:
"* * * MANAGEMENT, desiring to supply its tenants of the premises hereinafter described with modern efficient laundry facilities which COMPANY is willing to supply as hereinafter specified, in consideration of the covenants and agreements hereinafter set forth and in the consideration of the sum of $1.00 to MANAGEMENT in hand paid by COMPANY, receipt of which is hereby acknowledged, hereby leases to COMPANY all of that certain real estate situated in 2134 Metairie Rd. Maison Metairie Apts. the City of Metairie, County of Jefferson, State of La. consisting of all laundry space in the project owned by MANAGEMENT known as Maison Metairie Apartments for the purpose of installing, maintaining and servicing a special washing, drying and laundry equipment system therein for the term of five years, commencing *384 on the date hereof and ending on the 29 day of May, 1975 * * *."
The apartment owner was to receive monthly 40% of the gross proceeds from the coin-operated laundry equipment.
After Drury took possession of the apartment complex, Fo-Coin continued to operate the laundry concession for approximately eight months, paying defendant an average of $35 per month. Approximately 60 days before the eviction, Drury advised plaintiff's owner, William Fothe, that he would like him to remove his laundry equipment. Fothe advised defendant or one of his agents that plaintiff had a written lease guaranteeing possession until May of 1975. At this point Drury, an attorney, checked the conveyance records of Jefferson Parish and learned there was in fact a recorded lease that the clerk of court failed to note on Drury's preacquisition conveyance certificate. Nonetheless, concluding he was not bound by the terms of the lease because the conveyance certificate failed to note it, Drury persisted in his request that plaintiff vacate and when Fo-Coin refused to comply, Drury used self-help and disconnected plaintiff's machinery, placing it in the covered breezeway of the apartment complex. When Fothe became aware of this, he had the equipment picked up.
Defendant contends he is not liable for wrongful eviction because the agreement was a service contract, as opposed to a lease. We disagree. C.C. art. 2670 requires a contract of lease to specify the thing leased, the price to be paid and the consent of the contracting parties. The consent is not disputed. The "thing" is the laundry space in the complex, which, while not specifically described in the contract, was known to everyone involved in this litigation. The price was 40% of the gross proceeds. While the record reflects the lessor had no system by which it verified what the receipts were, there is no prohibition against the lessor accepting the accounting rendered by the lessee.
Nor can defendant avoid liability for wrongful eviction by relying on a clear conveyance certificate. Public registry protects the rights of third parties. C.C. art. 2254, R.S. 9:2721. And this is true even where a clerical error in issuing a conveyance certificate results in a purchaser taking title failing to be apprised of the outstanding obligation running against the property he acquires. Lewis v. Klotz, 39 La.Ann. 259, 1 So. 539 (1887).
Defendant, having breached the obligation to plaintiff imposed by C.C. art. 2692(3) to maintain the lessee's peaceable possession is liable in damages. First, plaintiff claimed a loss of income of $854.28; however, despite exhaustive efforts exerted by all counsel, Fothe failed to prove his loss of profit. Although he operated his business for 25 years, which consisted of placing and maintaining washers and dryers in multiple dwelling buildings, he said he could not explain to the court from his records what his net profit was from his operation in this particular apartment complex. It is only from his own records that the loss, if any, could have been ascertained and since he failed to establish what should have been readily ascertainable from his own books and tax records, we cannot allow recovery.
Plaintiff is, however, entitled to general damages for wrongful eviction and the disturbance of his peaceable possession guaranteed by C.C. art. 2692. Defendant's decision to evict apparently was based on an interpretation of law we do not uphold concerning to what degree the conveyance certificate affected the lease agreement. Then, he resorted to self-ejectment, rather than file eviction proceedings in the proper court. When a lessor takes the law in his hands by unlawfully dispossessing a tenant, he commits a trespass and is liable for general damages. See Weber v. McMillan, 285 So.2d 349 (La.App. 4th Cir. 1973), and cases cited therein. We think an award of $750 is appropriate under the circumstances.
Drury's third party demands against Dr. Hunt and Mr. Justice for indemnification must be dismissed. Before he resorted to the eviction, defendant was fully aware *385 of the existence of the lease and its inscription in the conveyance records. The damages he incurred are attributable to his own errors in legal judgment by physically evicting the lessee and were not based on the prior error of the clerk of court or the omission of Dr. Hunt to inform him of the lease agreement prior to the sale.
Plaintiff further seeks attorney fees of $500 under the authority of C.C. art. 1934 and Smallpage v. Wagner & Wagner, 84 So.2d 863 (La.App.Orl.1956). The codal article limits recovery of attorney fees to situations where the "* * * creditor be guilty of any bad faith * * *." The record does not support an attorney fee award under C.C. art. 1934(4) or (5)or the Smallpage application.
For the reasons assigned, the judgment appealed from is reversed insofar as it dismisses the main demand, and it is now ordered that there be judgment in favor of plaintiff, Fo-Coin Company, and against defendant, Edward R. Drury, for $750 with interest from date of demand. In all other respects, the judgment is affirmed. Defendant is to pay all costs.
REVERSED IN PART; AFFIRMED IN PART.
REDMANN, J., concurs with written reasons.
REDMANN, Judge, concurring.
If the owner's 40% of gross averaged about $35 a month then the lessee's 60% of gross averaged about $53 a month. He thus lost about $742 in the 14 months he was deprived of the leased premises. His costs presumably remained almost unchanged by the loss of this one locationhe would not have been able, for example, to discharge an employee or to stop amortizing the machines from this location. The $750 award will compensate for that loss.